Good morning, Your Honors. My name is William Harbeck. I represent Work Zone Safety, Inc. Good morning, Your Honors. Stephen Falco, FUOCO, Falco Law Group, Ltd. on behalf of the Pele Crest Hill Land Development, LLC. Thank you. Well, we've given you each 15 minutes, but there's always a complication in one place or another, so we can always extend it a little bit if you need it. So, if you would, Mr. Harbeck, if you would start. May it please the Court. Again, my name is William Harbeck. I represent Work Zone Safety and the appellant in this matter. And we are requesting the Court to reverse the orders entered by Judge Allen in the Circuit Court of Cook County on the basis that the equitable relief he awarded was an improper collateral attack on the judgment and they committed reversible error. The judge committed reversible error when it awarded equitable relief to the defendant, Crest Hill Land Development. Your Honors, this deals with a wetlands escrow agreement that was entered into between the parties in 2008. It coincided with a vacant land purchase agreement between the parties. My client, Work Zone Safety, is an Illinois corporation that is located in Crest Hill. And in the process of them building a facility to operate out of, they purchased this property. The property included, it was about 10.75 acres, and part of that was wetlands that were controlled by a restrictive deed and were federally protected wetland property, which obviously could not have been developed on in its present state. So, after the vacant land purchase agreement was entered into, a wetland escrow agreement was entered into between the parties, which provided or required that the seller, Crest Hill, mitigate the property, which basically meant make it useful for Work Zone. What happened to the $50,000 that was supposed to be put up to do the remediation? It was put in escrow. Was it used? No. They never got to that point. In fact, the agreement provided that Crest Hill had a year to do the mitigation, and the steps that were required to do that, they did not even start until May of 2009. So, they were way behind, and they never got it. Ultimately, we were able to attach that property, or those monies, and that was turned over pursuant to the citation proceeding after the judgment was entered. So, that money was never used. Was it $170,000? It was $50,000 at the time, but as the requirements grew or as they knew how much was going to be required for mitigation, they were required to put more money in, and that was never done. The mitigation process is a long process. You have to go through the Corps of Engineers, and then after you get approval from the Corps and the deed restrictions lifted, you actually have to drain the property, you know, it's underwater, and then fill it. So, it was a long process. Crest Hill never really started it, and that's why when the time period arose for it to be completed, my clients exercised their option, which provided a right to sell back the property to Crest Hill. Crest Hill refused to buy back the property, and pursuant to the arbitration clause, Crest Hill commenced an arbitration, which went to hearing in 2010, July. And August 4, 2010, the arbitration award was entered. And, you know, we just sued for the contract price, which was $224,000. The arbitrator obviously treated this as a specific performance claim, because what he did was he said, I'm going to enter this order of $224,000 plus attorney's fees, costs, all those things, and you're required to go through with the sale. If you do not do it, the award stands. Now, he didn't say how long it took, but because they had the original option of 30 days, we waited for 30 days. They did not, we may have even made a demand to close. They did not do that, and so consequently, about a month later, we filed a lawsuit to affirm the award. We filed the lawsuit. The Crest Hill appeared, filed a counterclaim. The counterclaim was late. They're required to file it within 90 days after the award. They did not do that, and the filing of our lawsuit didn't call that. So in March of 2011, the counterclaim was dismissed. On the same day, judgment was entered for the full amount of the award, and it was later amended to take into account costs. So as of April 14, 2011, we had a judgment for $258,579. What about the circuit court's modification of the order? Well, this original order was entered when Stuart Palmer was sitting in that chancery seat, and then we commenced collection proceedings. We got a turnover on the escrow that was set aside for the mitigation, and then we also got a turnover, or we served the Bank of America with a citation, which revealed they had over $120,000. At that point in time, Crest Hill ran into court and filed an emergency motion, and they were seeking to do the deal again. And we entered into an agreed order in May. Mr. Herbeck? I'm sorry. I just wanted to get to the substance of the orders originally entered by the circuit court. There's one on March, April, and May. And do any of those orders, March, April, or May, contemplate a selection or an election by a work zone to either retain the money damages or retain the real property? Absolutely not. At that point in time, we had a judgment for a full amount of the money, and Crest Hill never objected at that point in time as to unfairness or that it was a double recovery or anything like that. Well, what about the May 2011 order in which the circuit court refers to a transaction that the parties contemplate closing in June? Correct. They came in on an emergency motion. My client wanted to settle, and they were, at that point in time, still willing to do the deal if we got fully compensated. So we entered an agreed order, and Stuart Palmer entered the order saying, yes, okay, you've got until June, do the deal. But you were supposed to conclude it by the 6th of June, and that didn't occur. Correct. It did not happen. So the next day we executed on the citation against Bank of America. Throughout this whole process, there never was an objection to the arbitration award being beyond the scope. There was no objection to the unreasonableness, the unfairness of keeping both. It was anticipated at that point in time that we got a money judgment. We had this property for four years at the time the judgment was entered. It was our property. Not only was there no objection, but there was no appeal. There was no appeal. So we go on for 22 months trying to collect on this judgment. We got in a big fight with First National Bank of Joliet over some money. We've expended $80,000 trying to collect on the full amount of the judgment. Then in March of 2013, 22 months, as I mentioned, after the award was entered, they come in and seek equitable relief, claiming it's unfair that we have title of the property and that we can collect on the judgment. So not only they didn't file a direct appeal on the circuit court, they didn't file a direct appeal on any order that was entered. Finally, at some point, I think the March 11th order and then maybe the May 13th order, the court basically disconnected them and said, Well, once the counterclaim is dismissed, there's really nothing else to do for the circuit court other than and at that point in time, we have a money judgment for $258,000. That's all they have to do. Press Hill never went back to the arbitrator. They never asked the court for any extraordinary relief at that point in time. They didn't file an appeal.  Well, it looks like it's pretty close. The number was changed constantly from up to $268,000, something in that neighborhood, all the way down to about $224,000. So we've essentially collected about $170,000 on the judgment from those two citations where we got turnover orders. So just on the judgment itself, with the post-judgment interest, we're well over $100,000. That remains to be paid. About $100,000? Well over $100,000. That remains to be paid just on the judgment and the balance of the judgment and the post-judgment interest. But who exactly has title to the property right now? We do. It's always been our property. They come in and suggest that somehow the supplemental proceedings requires, and they come in and they argue 12-183, which really doesn't provide any relief from a judgment. It's just whether or not the judgment's been satisfied and the debtor is entitled to a release. They didn't suggest that. They came in and said, well, it's just unfair to have these two. It really wasn't a mechanism. But they came in under that guise because obviously having the appeal time lapse and this passage of time they couldn't come in and ask for a vacation of the judgment in those words. But essentially that's what the court did. Essentially that's what they asked for because the arbitrator said you can't have both. If Cress Hill doesn't. And now they're saying, arguing to the court and the judges agreeing, you can't have both. It doesn't seem fair to me. And that's our problem. We don't think the court at this point in time can interject their idea of fairness. But the deal was that they were either to take the money or the land, one or the other. The deal was that they had to buy it back. And, you know, specific performance, if you are the buyer and you want to buy property, obviously the court has remedies to force the sale. I mean, you can put a cloud on the title. You can issue a judicial deed. In this case, we're the seller and we want to force a sale. The arbitrator and the court really doesn't have any other mechanism to say that either you do the deal or the judgment stands. I mean, this was the relief that the arbitrator came up with. And they didn't come through with it. And it was clear from the day that the award was entered that if they don't do the deal, the judgment's going to stand. It's our property. It wasn't even a question at that point in time. So 22 months later after the judgment's been entered, they come in and say that decision by the arbitrator is unfair. It's too late. They can't attack it by way of a supplemental proceeding. They certainly can't come in on a 12-1-83 to attack it. The court is required to give deference to the arbitration award, even if they think it's wrong, even if they think it's based on a misinterpretation of facts or laws, even if they feel that it is unfair. Actable principles. I'm sorry? I'm sorry. Mr. Horvath, I wanted to move to the attorney's fees for a second. Why? What's the basis under the wetlands escrow funds for post-judgment fees and costs? We're claiming that that was the intent of the wetland escrow agreement. The important thing about that argument is, number one, that the court did not consider the fact that when they were trying to put parties back to the place where they wanted to be, we heard status quo ante and those type of arguments. They did not consider the fact that we did incur $80,000 more, basically reducing our judgment if we don't get that. Well, the court determined that fees weren't appropriate based upon the terms of the agreement. Well, the arbitrator determined that the fees were appropriate. $9,000 plus for administrative costs surrounding it, but there were no fees paid to counsel? The arbitration award granted us $20,000 in fees and costs. But the award doesn't, there is no language, I'm asking if there's any language in the award that contemplates that the prevailing party is entitled to post-judgment fees related to collection, supplemental proceedings, citations, et cetera. The award does not include that. I think that by implication of the language in the escrow agreement, it does. And Judge Allen determined on his own that the escrow agreement did not provide for fees, which is contrary to the arbitration award. And like I said earlier, regardless of whether he disagreed with it, he was bound by it. Counsel, can you direct us to some language in the escrow agreement which provides that you're entitled to fees? Well, the language in the escrow agreement that provided for fees is on page 6, paragraph 9G. But it says if either purchaser or seller obtains a judgment or arbitration award against the other by reason of a dispute regarding the disposition of the wetlands escrow funds here under it. Right. It says regarding the disposition of the wetlands escrow funds. Mm-hmm. Well, that's your authority for your position. That's what we asked or prayed for to the arbitration. And the arbitrator awarded those funds. Judge Allen disagreed, but he's still bound by the arbitration award. And, you know, the important thing is that he just disregarded what the arbitrator said and decided that no attorney's fees were warranted. Counsel, I'm sorry, the circuit court isn't trying to request a disgorgement of the fees already? Correct. Awarded, right? It's just the future fees related to post-judgment. Right. Okay. We also made a claim that because the defendant was relying on equity, that equity served would require that fees be awarded. Now, there's no specific authority for that, but equity can form remedies regardless of whether they have legal precedent. And in this case, he ignored the fact that he was going to put the parties back and give them an opportunity to buy this property, ignore the fact that in the intervening 22 months we had incurred $80,000 of additional fees. So if we got paid in full, we still had that basically cut into our award. And we made the argument that if he was going to do equity, which we never agreed was appropriate, but if he was going to, he should have taken into consideration the fees that were awarded because he could, you know, to get equity, you must do equity. And we were the ones that were experiencing an inequitable result by this. Just due to the delay and due to the attorney's fees that were incurred, they knew all along, they got notices of all the citation proceedings, all the supplemental proceedings to collect on this judgment, and they never showed up. They never showed up in court. They didn't come in to take a stand on the first national fight that lasted for six months. It incurred a big, big amount of that. And the only time they did show up was after judgment liens showed up on properties that they sold and title companies came to them and said, you're going to be responsible for these judgments. That's when they come into court 22 months later and say, well, we need relief from this judgment. Under the guise of we need equity. Well, equity does not throw out judgments because they may be unfair. And, you know, the maxims of equity weren't considered in this case. There was no hearing. Initially the judge said, well, maybe there was some unjust enrichment. We've got to determine what the value of the property was. So he reluctantly said, okay, judge, let's have a hearing because there was a lot of factors, including the failure to mitigate, that go against the value of the property. And then he turned on us in October when he entered the judgment and said, we don't need that anymore. I just can't see that the retention of both goes what the court deems to be equitable and fair. So he's interjecting this equitable idea where it really isn't appropriate to vacate a judgment. And it was all under the guise that this was in supplemental proceedings and that they had the power to do that. Well, the long and short of it is he clearly said that he's contrary to what the arbitration award was. He didn't give deference to it. I mean, without very extreme circumstances, an arbitration award should be entered. They filed a counterclaim. That was dismissed. And he didn't do what he was supposed to do in that sense. The judgment was entered. There was no appeal. And now the judge thinks that for some reason equity gives them a right to change the award and the judgment. So respectfully, Your Honors, I would ask that the decisions by Judge Allen entered on October 2nd of 2013 and May 30th, 2013, concerning the right to equity be reversed, that the case be sent back, and let us proceed. We shouldn't be required to transfer back the property. We should be able to proceed and collect the full amount of our judgment. Thank you. Thank you. May it please the Court again, Stephen Fuoco, F-U-O-C-O, on behalf of the Fuoco Law Group, representing Apelli Crest Hill Land Development, LLC. This appeal, to summarize, is one where a windfall is desperately being tried to be held onto. And that windfall arises from exactly what the arbitration award was. Great liberty has been taken by appellant's counsel regarding what is in the arbitration award, as well as the escrow agreement. So at A-15 in the appendix, there is a clause. That clause is operative. The award of $224,000, excuse me, $224,029.08 in favor of the claimant stands. The arbitration award only awarded money. The arbitration award is silent regarding the disposition of the property. The arbitration award was confirmed by Judge Palmer, amended by Judge Palmer, and supplementary proceedings began. Mr. Fuoco? Yes. If an award or an order or a judgment is silent as to disposition of assets or property, why should we construe that to mean that the award was intended to change the status quo? The status quo at the time the award was entered was that Work Zone had the property, but was owed a judgment. Correct? Right. And that's where 12-183 comes into play. Do you have any authority that you have for your position that 12-183 empowers the court to consider the underlying judgment that your opponent maintains, and all you can do is determine whether or not there's been satisfaction? And the cases I've looked at seem to support his position. Do you have a case other than the trial judge's order that supports your position? Yes. I think the court has to combine what it says in the Kyler case from the second district that was cited in the brief. That's 200 Illinois Appellate 3rd, 121, decided in 1990. The second district in that case made observation that the case law regarding 12-183, 735 ILCS, regarding supplementary proceedings, is devoid. And that's what makes this appeal very important. What do you mean by devoid? The second district observed there is virtually no case law construing this section or its predecessor in the opinion. 183 speaks for itself. It's really just to cap judgments to make sure they're satisfied and get a release from the court. Nothing more. Well, the court in the second district went further, and that's what's helpful or instructive for this court to affirm Judge Allen's order. And that is the fact that the statute really looks at what has really been paid. And I stress that in the brief. The analysis is this. In doing equity, Judge Allen had to look back at who should have the property based upon the election. But wasn't that decided in the underlying judgment? No. No, it was not. All the judgment did was confirm the award. All the award did was awarded work zone safety money. In doing equity, you have to look back at the escrow agreement to ascertain who should have title. And that title belonged to my client based on the election that work zone made, which was to return the property in exchange for money. So you're telling this court that you can collaterally attack the underlying judgment in the supplemental proceeding? It's not a collateral attack because, number one, the judgment doesn't award the disposition of the property. Where was your motion to dismiss the citation file? In the supplemental proceeding, correct? Yes. All right. So you're attacking the underlying judgment in the supplemental proceeding. No, I'm not, Your Honor. I used 12183, the B sub. In the supplemental proceeding. The B sub part, relying upon Heller, where equity was done, relying upon Kyler, that permits the court to look at what has really been paid. The party set the value of the property at $224,029.09. They hung on to the property. Then the question becomes, has the judgment already been satisfied fully or partially based upon the property, the value of the property and the dollar amount it's worth, in addition to taking takeover funds of $171,000? If you add them together, that's a gross windfall. That cannot stand. Was there anything that prevented you from taking a direct appeal from the order confirming the arbitration award? If there was, that deadline was lost, and that was yes. My question is, counsel, is there anything that prevented you from directly attacking the underlying judgment, which was the confirmation of the arbitration award, yes or no? I don't believe so. And that's the order that you feel is unfair, correct? No. Oh, it's not. It confirmed the arbitration award. The unfairness and Judge Allen's doing of equity was to look back in deciding who should have the property. To look back at what? The order confirming the arbitration award? This is his finding of fact. You aren't answering my question. Was he looking at the order confirming the arbitration award? Judge Allen looked at everything. He looked at that order and everything else. What was the order that was being considered in the supplemental proceeding? The order confirming the arbitration award. Judge Allen looked at everything, and that's part of the hearing that was held in August of 2014, and his findings were expressed in there, which is looking back at the escrow agreement and seeing the return and how the return is supposed to be done. There was a unilateral obligation by Work Zone Safety when making the return to deed back the property to Crest Hill within 30 days free and clear of any encumbrance. That did not happen. So based on doing equity and analyzing the facts as they stood, Judge Allen found that Crest Hill should have the property. And because Work Zone Safety had the property, plus collecting money on top of that, they had received a windfall if things stood as they were. And that's what he attempted to correct. Isn't that outside the scope of Section 12-183B, though? I mean, as a matter of procedure, let me ask you first. Did you make a demand on Work Zone for a release of the obligation? Was there a demand made? I'm sorry, a demand? Section 12-183B requires that if the judgment creditor refuses, fails or refuses at the request of the judgment debtor to execute and deliver an instrument in writing releasing such judgment, then the debtor can petition the court. So I want to know as a matter of procedure, was the first part of 12-183B satisfied? Did you make a demand or request for an instrument from Work Zone releasing the judgment or indicating satisfaction of the judgment? Was that done before you filed your motion to dismiss under 12-183B? I personally did not. However, I was successor counsel, prior counsel. The Stuart Kroskoff Law Firm had. So you're not aware that there was a demand or request made? What I know, and this is what I was about to say, is that there was in the counterclaim or in the proceeding before Judge Palmer in motion, an issue about the fact that Work Zone still had not deeded the property over. And that would be, whether you call it formal or informal, including it in a motion, for relief sought from Judge Palmer, which was ultimately denied. I can say, based on what I know of the record, that could serve as a request. But was it formal? I don't know. Did I do it? No. In this discussion, I haven't heard anything. So is it your position that the arbitration award has subsumed the escrow agreement itself and it has no control whatsoever over what the party's intended? We know when a judgment is entered, a contract merges into the judgment. But that's a legal analysis. We're looking at equity. Again, following Heller, not following, but using Heller as instructive in terms of what you can do, in 12-183, Judge Heiple and Heller said, this plaintiff is entitled to equitable relief regarding the land which has been withheld. The remedy was different. But it's instructive for the court from a 1983 opinion from the third district to say, 183 allows for looking at what has really been paid. And if something has been withheld as a matter of property, whether it's real property like it was in Heller or something else, there should be a credit or something done to be sure that equity is done. And that was our only point. I have offered to tender, and this is the logic of this appeal, I offered to tender $109,000 in change to Work Zone Safety to end this proceeding. Yet we have an appeal. Again, they want to hang on to what is a windfall. Using the silence of the arbitration award and the silence of judgment to say, we hung on to it, there was no change in disposition, therefore we're entitled to it, which is something that was never awarded in arbitration, never granted in judgment. Doing equity requires a look back at the ESPER agreement return of property sale provision, which Judge Allen did in August of 14, to say, title belongs to Crest Hill. Mr. Fulco and Heller, there's an important distinction. The property was part of the appeal bond that was posted voluntarily, correct? You are correct, and that's why I call it instructive or helpful. The court, as Judge Allen observed, this is not square on all fours, but he found it instructive. That is that equity can be done in a 12183B proceeding. And two, if you look at Kyler, the first opinion to really define what this section does, it's about what has really been paid. There's not a modification or in any way a vacater of a prior judgment, though. No, I never asked for that, and I tried to make that very clear in my brief. We approached Judge Allen to do equity based upon a windfall. He ordered what he did to prevent the windfall. He found that equitable action is warranted, that all works on safety was entitled to, which is a money judgment. He set that amount at 109 plus running interest through October the 10th of 2014. We offered a tender, and yet here we have this appeal. This is an attempt to hang on tightly to a windfall to the detriment of my client. That was undone in the Chancery Division. It was undone for proper reason, and we would ask the court to affirm what Judge Allen has done to make sure this windfall doesn't become a reality. Just so I'm clear, you were saying you have $109,000 to settle this case? Absolutely. I set it on record. It's found in the record on appeal. The issue for my client was being in the worst recessionary period in history, not selling property, the streams edge options to purchase that go on and on and on. I believe there were four different versions of options to purchase, ultimately came to fruition. Forty acres were sold. The proceeds of that went into First American Title. A citation to collect the judgment was served on First American Title. The mortgage for my client's property was sold to Division Gaylord. They filed an adverse claim in front of Judge Allen. They succeeded. So with all that said, the mortgage was sold. There was an adverse proceeding against the bank. Once we finally asked for the accounting and discovered what the right amount was, which I've outlined in the brief exactly how the amount owed was misstated based upon the addition of post-judgment fees and costs, which they weren't entitled to. So finally, when we get down to the right amount, taking proceeds from an actual sale of land, I was able to say, Judge, we'll tender it. We will do it now. They have said we don't want the property. We want money. Fine. We're ready to give you money. And we've paid for the time spent by post-judgment interest that we have to satisfy. That is how this disposition should occur. And yet, here we are on appeal. Thank you very much. Any other questions? No, thank you. Thank you. Mr. Herring, everybody? A couple of things. Council mentions why they couldn't go through with the sale earlier. Obviously, that's not part of the record. Also not part of the record is they couldn't go through the sale because the members were suing each other in both Cook County and Will County. One of the complaints was that one member wasn't paying bills as they came due. This company was in a spiral downward. The fact that the members couldn't get along and do business doesn't mean that our company should be dragged down with them. There was no demand, Judge, with respect to the instrument. There was nothing for 22 months suggesting that there was some type of windfall. We hear windfall. We don't know about windfall. We've got a wetlands that you can't do anything with. They come in and claim that there's a windfall. There was never any determination of a windfall. And Judge Allen backed off of that idea and just said it's just not fair. You get the money. They get the property. And the problem I always had with this in a supplemental proceeding was that they were trying to claim that our property that we That's our property. And there's nothing in any of the decisions that were entered here that would suggest that they're entitled to a credit for that. It's very clear. The arbitrator wanted to force them to do the sale. And the penalty was if you don't do the sale, the judgment's going to stand. And that's what happened. They had an opportunity after we made an election to do the sale. They had an opportunity after the arbitrator's award to do the sale. And then we agreed before Judge Palmer to let them do the sale. And each time they failed to do it. Now they say this is all unfair. Well, that horse has left the barn. And Judge Allen can't invoke equity in a situation like this even if it's unfair. There's very limited scope for equity to act. And they have to follow the law. And they're not following the law here. The cases he cites, you know, the Heller case is not a 12-133 case. It involved collateral. Keillor had to do with a judgment. Debtor asking for credit for, you know, personal injury action for money he paid before the judgment was entered. It has nothing to do with this at all. There was no transfer. There's no credits. There's no demand. It's a late effort attempt to undo an arbitration award and a judgment. So we would ask that this judgment be reversed. Thank you very much. Counsel, thank you for your presentations. Well deserved. Thank you.